## ESTATE OF WILLIAM RENTON, DECEASED.
### [No. 11,203; decided June 1, 1892.]

**Will Contest.**—Any Person Interested may Contest a Will, either before the same is admitted to probate or at any time within one year thereafter.

**Will Contest—Parties Plaintiff and Defendant.**—On the trial of a contest of a will before probate, the contestant is plaintiff and the petitioner is defendant.

**Will Contest—Form of Written Opposition.**—The "written grounds of opposition" to the probate of a will constitute the only pleading of the contestant, and must have the same qualities and contain the same requisites which the code prescribes for complaints in civil actions.

**Will Contest—Form of Written Opposition.**—The written opposition to the admission of a will to probate must, in addition to the formal parts and the prayer, contain a statement of facts constituting the contestant's cause of action in ordinary and concise language, which statement must answer all requirements of the general rules of pleading prescribed by the code for complaints.

**Will Contest—Persons not Interested.**—The right to contest a will is confined to persons interested in the estate, and therefore no stranger can be heard to object to the validity of a will.

**Adoption—Compliance with Statute.**—The adoption of children was unknown to the common law; the institution in this state is purely a creation of statute, and one who claims to have been adopted must show that the statute has been complied with.

**Common Law.**—The Jurisprudence of California rests exclusively upon the common law, which was made the rule of decision at the

time of the formation of the state government in all cases where not abrogated or modified by statute.

**Adoption—Right of Inheritance—Conflict of Law.**—The legal status of a person as a child by adoption, acquired under the lex domicilii, follows him on a change of domicile, and carries with it the right of inheritance incident to such status, unless the same is repugnant to the law of the latter domicile.

**Will Contest.**—An Allegation that the Contestants are the Adopted and only children and heirs of the decedent is the statement of a mere conclusion of law, and defective as against special demurrer; the particular facts upon which the claim of adoption rests must be alleged so that the court may determine whether, under the laws of this state, or under the laws of any state, the precedent conditions exist which constitute a valid adoption and invest the contestants with the right of inheritance.

William Renton died on July 18, 1891, at the town of Port Blakely, county of Kitsap, state of Washington, of which place he was a resident at the time of his death. He left a will dated December 12, 1876, and executed in the state of Washington according to the laws of that state, and in conformity with the laws of this state. John A. Campbell was named as executor in the will, which was admitted to probate on October 28, 1891, by the superior court of Kitsap county, state of Washington.

On December 24, 1891, the executor filed in the superior court of the city and county of San Francisco, state of California (in which city and county decedent left estate), a copy of the will and the probate thereof by the superior court of Kitsap county, state of Washington, together with a petition for letters testamentary, pursuant to section 1323 of the Code of Civil Procedure.

On January 27, 1892, Mrs. Elizabeth W. Sackman and Mrs. Mary A. Gaffney filed written grounds of opposition to the probate of this will, and alleged that they are the adopted children and the only children and heirs at law of the deceased, to which the executor filed a demurrer.

Blake, Williams & Harrison, for the petitioner.

James L. Crittenden, for the contestants.

COFFEY, J. On December 4, 1891, petitioner filed in this court a copy of said will and the probate thereof by the superior court of Kitsap county, state of Washington, duly authenticated, as required by statute, with a petition that the said will be admitted to probate. After notice duly published this court heard said petition and received proof of the probate of said will, at the time and place appointed. and heard the evidence of the petitioner in support thereof.

On the twenty-seventh day of January, 1892, the contestants filed their ''written grounds of opposition'' to the probate of said will, alleging their interest in said will, and in the estate of said deceased, to be that of ''adopted'' and the only children and heirs at law of said deceased, and alleging as grounds of contest the several grounds allowed specifically by the code in cases of contest *before* the admission of wills to probate.

To these written grounds of opposition, filed by contestants, the petitioner filed a general demurrer, and also a special demurrer to the sufficiency of the allegations therein relating to adoption, and upon the ground that the allegations of contestants respecting the same were ambiguous, unintelligible and uncertain.

In support of the questions raised by the special demurrer, and not to aid the general demurrer on the questions raised thereby, petitioner presented an elaborate argument in writing. The general demurrer was argued orally.

The code provides that persons interested may contest a will, either before the same is admitted to probate or at any time within one year after the same is admitted to probate.

The method of contesting a will before its admission to probate, as prescribed by section 1312 of the Code of Civil Procedure, consists of the filing by the contestants of written grounds of opposition to the probate thereof. In such a contest the statute makes the contestant the plaintiff and the petitioner the defendant.

The same section provides that the petitioner, and any other resident of the county interested in the estate, may demur to the written grounds of opposition upon any of the grounds of demurrer provided for in part 2, title 6, chapter 3, of the Code of Civil Procedure. This chapter,

title and part refers to and prescribes the office and functions of a demurrer to the complaint in civil actions.

The "written grounds of opposition" constitute, under the code, the only pleading of a contestant of a will before its admission to probate; and, if the same may be demurred to upon any or all of the grounds allowed by the code to a complaint in a civil action, it necessarily follows that this pleading in this special proceeding must have the same qualities and must contain the same requisites which the code prescribes for complaints in civil actions.

Therefore, this pleading, in addition to the formal parts and the prayer, must contain a statement of facts constituting the contestant's cause of action in ordinary and concise language, and such statement of facts must be sufficient, and answer all requirements of the general rules of pleading prescribed by the code for complaints.

The right to contest is confined by the code to persons interested in the estate, and, therefore, no stranger can be heard objecting to the validity of a will.

In the written objections filed by the contestants against this will they allege, for the purpose of showing that they are so interested and therefore entitled to contest, that they are the adopted and only children and heirs at law of the deceased. They do not show when or where, under what law, or in what state or domicile, they acquired this status, or what judicial proceedings, or what legislative act, if any, created this relation of parent and child and invested these adopted children with the capacity of succession or inheritance. Neither do the contestants allege any other interest in said will except as the adopted children of said deceased.

Against this allegation and the written grounds of opposition that the contestants are adopted children, petitioner interposed a special demurrer, because the allegation is ambiguous, unintelligible and uncertain in this:

First. Because it does not state the place of their adoption.

Second. Because it does not specify the time of their adoption.

Third. Because it does not state the manner or any particulars of said adoption.

To support this special demurrer, as well as the general demurrer that the written grounds of opposition do not state facts sufficient for a denial of the probate of said will, petitioner urged the following as propositions of law, pertinent to the issue, viz.:

First. That the adoption of a child creates a status which was and is entirely unknown to the common law, and that this relation has been established by statutes in various states in this Union, and that, until such establishment, there was no procedure or method in existence by which the relation of parent and child could be created, investing the latter with the legal right of succession and inheritance.

Second. The status of any person with the inherent capacity of succession or inheritance is to be ascertained by the law of the domicile which creates the status—at least, when the status is one that may exist under the laws of the state in which it is called in question, and when there is nothing in the latter laws to prevent giving full effect to the status and capacity required in the state of the domicile.

Third. That the statement of the contestants, without any allegation of further facts, that they are the adopted children and the only children and heirs at law of William Renton, deceased, involves a mere conclusion of law or inference, in which they may be greatly mistaken. That the status of an adopted child in this state being created by statute and by compliance with certain formalities upon a judicial hearing and determination, it will not do for them to merely state that they have been adopted, without giving the court the necessary material and information to test the accuracy of that statement. If the parties rely upon the judgment of any court authorizing the adoption, they must state what court rendered the same, and the date when, and that it was duly given, so their adversary may join issue upon these facts, and deny the existence of such judgment, or plead facts in avoidance of the same; or, if the parties rely for adoption upon any other method or procedure prescribed by statute, they must show by specific averments that the statute has been strictly complied with.

Fourth. That when a pleader wishes to avail himself of a statutory privilege or right given by particular facts, he

must show those facts; those facts which the statute requires as the foundation of the rights must be stated in the pleading. And that in this case, in order to give the contestants a right to be heard in this court against the probate of the will, they must allege such particular facts showing that they are parties interested, and not mere strangers to the proceedings.

1. In support of the first proposition above stated, petitioner cited the case of Morrison v. Estate of Sessions, 70 Mich. 297, 14 Am. St. Rep. 500, 38 N. W. 249. In this case the court gives an interesting historical account of the origin and nature of adoption as a product of the Roman law, requiring an imperial rescript, or a proceeding before a magistrate to create the relation of parent and child by adoption. The court say: "It (adoption) is not recognized by the common law of England, and exists in the United States only by special statute, and only a few of the states have ingrafted it upon their 'Jurisprudence.'"

The supreme court of Massachusetts, in Ross v. Ross, 129 Mass. 243, 37 Am. Rep. 321, to the same point declares that "The legal adoption by one person of the offspring of another, giving him the status of a child and heir of the parent who adopts, was unknown to the law of England or Scotland, but was recognized by the Roman law, and existed in many countries on the continent of Europe which derived their jurisprudence from that law. It was long ago introduced from the law of France or of Spain into Louisiana and Texas, and more recently at various times and by different statutes throughout New England, New Jersey, New York, and in a large proportion of other states of this Union. One of the first, if not the very first, of the states whose jurisprudence is based exclusively on the common law, to introduce it was Massachusetts, by the statute of 1851, chapter 324."

In the case of Tyler v. Reynolds, 53 Iowa, 146, 4 N. W. 902, the supreme court say: "The right of inheritance is purely a statutory right, and is therefore arbitrary, absolute and unconditional. Nevertheless the provision of the statute must prevail, although to do so in some instances is inconsistent with our views as to what constitutes natural right

and justice. Therefore, a child by adoption cannot inherit from the parent by adoption unless the act of adoption has been in strict accord with the statute.''

. The jurisprudence of the state of California rests exclusively upon the common law. The common law was made the rule of decision at the time of the formation of the state government in all cases when it was not abrogated or modified by statute. Following the decisions of the highest courts of other states, the supreme court of California, in the matter of the Estate of Stevens, 83 Cal. 322, 331, 17 Am. St. Rep. 252, 23 Pac. 379, declares that ''The adoption of children is purely a matter of statute pertaining to the legislature, with which a court or judge has nothing to do unless the power is conferred on them by statute. The matter of adoption belongs to the legislature, and not the judicial department of the government. We know of no rule which ever enabled any person or tribunal, whether notary public, clerk of the court, judge or court, to perform the ceremony of adopting a child, unless such authority was conferred by the legislature. As the legislature has full power over this matter, it may invest any person, officer or court with the power of receiving, witnessing and declaring the adoption. It may prescribe what that ceremony shall be, and before whom it is to be celebrated. It may make the ceremony so simple that its celebration only requires the consent in writing of the parents of the child, and the acceptance of such consent by the person desiring to adopt, and filing such paper with a public officer. These rules are so evident that it is unnecessary to cite any authority to sustain them. The authorities on this subject are abundant.''

The same proposition is more strongly stated by the supreme court of this state in the recent case of Ex parte Clark, 87 Cal. 638-641, 25 Pac. 967, decided at the February term, 1891, as follows: ''We have held that our law of adoption is not unconstitutional, but to acquire any right under it its provisions must be strictly followed, and all doubts in controversy between the natural and adopting parents should be resolved in favor of the former. A child by adoption cannot inherit from the adopting parents, unless the act of adoption has been done in strict accordance with the

statute. No matter how persuasive may be the equities of the child's case, or how clear the intention of all parties, it must appear that the statutory conditions have been strictly performed, otherwise the relation never existed, and the right to inherit never was acquired. The right of adoption is purely statutory. It was unknown to the common law, and as the right when acquired under our statute operates as a permanent transfer of the natural rights of the parent, it is repugnant to the principles of the common law, and one who claims that such a change has occurred must show that every requirement of the statute has been strictly complied with.''

In support of the same proposition are the following cases: Coke on Littleton, 7 b., 237 b. 4; Phill., sec. 531; Fuselier v. Masse, 4 La. 423; Vidal v. Commagere, 13 La. 516; Ex parte Chambers, 80 Cal. 216-219, 22 Pac. 128; Am. & Eng. Ency. of Law, tit. "Adoption"; Schouler on Domestic Relations, sec. 232, n.; 2 Lawson's Rights, Remedies and Practice, sec. 809.

2. In support of the second proposition, that the law of the domicile alone can create a status of adoption and invest the adopted child with the right of succession or inheritance, reference is again made to a case already cited (Ross v. Ross, 129 Mass. 243, 37 Am. Rep. 321), where this proposition was elaborately and ably expounded by Chief Justice Gray of the supreme court of the state of Massachusetts. The case presented for adjudication in that proceeding was whether a child adopted, with the sanction of a judicial decree, and the consent of its father, by another person in the state of Pennsylvania, where the parties at that time had their domicile, under statutes similar to those in Massachusetts, and which, like the latter, gave a child so adopted the same rights of succession and inheritance as legitimate offspring, in the estate of the person adopting him, was entitled, after the adopting parent and the adopted child had removed their domicile into the commonwealth of Massachusetts, to inherit the real estate of the parent situated in Massachusetts, upon his dying there intestate. Without quoting the opinion in that case, the court unanimously held, in substance, that notwithstanding the settled principle of law

that the title and disposition of real estate must be governed and regulated by the law of the place in which it is situated, yet the legal status of a person as to legitimacy of birth, or marriage, or as a child by adoption, acquired under the lex domicilii, followed the party on a change of domicile and carried with it the right of inheritance incident to such status, unless the same was repugnant to the law of the latter domicile. The court in that case holds that: "The law of the domicile of the parties is generally the rule which governs the creation of the status of the child by adoption: Foster v. Waterman, 124 Mass. 592; 4 Phill., sec. 531; Wharton on Conflict of Laws, sec. 251. We are not aware of any case in England or America in which a change of status in the country of the domicile with the formalities described by its laws has not been allowed full effect as to the capacity thereby created on succeeding to and inheriting property, real as well as personal, in any other country, the laws of which allow a like change of status in a like manner, and with a like effect, and under like circumstances."

3. The foregoing serves simply to illustrate and expose views in relation to the subject of adoption, its origin, nature, qualities and incidents, and to the formalities required by law to create the status, in order to show that under well-known rules of pleading the "written grounds of opposition" to the probate of this will are utterly defective, and that the special demurrer ought to be sustained. If the contestants claim to be "parties interested" in this will, and base their claim because they are the "adopted children" of the deceased, and if the status of adoption is created only by a compliance with the statute of the state or country where the parties have their domicile regulating that relation and that status, they ought not to be allowed to state a mere conclusion of law, which tenders no issue and does not enable this court to judge from the statements of fact made by these contestants whether or not they have been legally adopted, and whether or not the statutes of the state under which they have acquired that status have been strictly complied with, so as to invest them with the right of inheritance, and to come into this court and object to the special proceedings instituted to admit this will to probate.

The contestants should be required to state whether they were adopted as children in this state and in pursuance of its statutes on that subject, or in the state or territory of Washington, where, according to the will, the deceased had his domicile, and if in the latter, they ought to plead as facts the provisions of the statutes of adoption, if there are any in force in that state, because this court does not judicially notice the statutes of a sister state; and, if they were adopted in some other state or country, they ought to plead the statutes of adoption of such state or country so as to enable this court to determine whether such statutes are contrary, in respect to inheritance, to the laws of this state, being lex rei sitae or repugnant to the public policy of the state.

If the contestants claim the status of adoption under a judgment of a court of this state or a sister state, or a foreign country, of either general or special and limited jurisdiction, they ought to give the title of the court and place of its jurisdiction and the date of rendition of the judgment, together with the allegation that such judgment was duly given as required by section 456 of the Code of Civil Procedure.

The contestants should state the time when they acquired the status of children by adoption, and that they were *minors* at the time of adoption, because the right to adopt and to create this artificial relation of parent and child is limited by the statutes of this state and by the statute of Washington, and that of every other statute in this country relating to this subject of *minor* children.

The written grounds of opposition herein filed state that each of the contestants is over the age of forty years. If they claim that they were adopted in this state the adoption is clearly illegal, because the first statute of adoption in this state was passed on March 31, 1870, when each of the contestants must have been at least twenty-two years of age, and four years past the time when they ceased to be minors.

The decisions of the supreme court of this state are innumerable that a conclusion of law, when pleaded, is not the "statement of fact" contemplated by the code, and does not tender an issue.

The supreme court of this state has also frequently held that a person pleading a right derived from a statute or a

statutory privilege must allege the facts which the statute requires as the foundation of his right.

In the case of Dye v. Dye, 11 Cal. 163, the question attempted to be put in issue was the status of certain property, whether it was common property of the husband and wife or the separate property of one of the parties. The wife as plaintiff alleged that the property in question was the common property, under the statutes of the state, of herself and husband from whom she had been divorced, and the object of the suit was to divide this common property. There was an allegation in the complaint that at the time of the divorce the property in question was their common property acquired after marriage and during coverture, and that their marriage took place in 1838, but contained no allegation as to the place of the marriage, nor the residence of the parties, nor that the property was acquired by the defendant subsequent to the passage of the community property act of April 17, 1850. The defendant demurred to this complaint, and the demurrer was sustained, from which ruling the plaintiff, not electing to amend, appealed. The supreme court affirmed the judgment, holding that the allegation that the property in question "was the common property" of the parties was insufficient, and that to bring herself within the provision of the act, therefore, the facts must be stated which give the right to the wife by the terms of the statute.

The court proceeds to say: "When a pleader wishes to avail himself of a statutory privilege or right given by particular facts, he must show the facts. The court pronounces upon the law, or the legal effect of these facts. The only question in this connection is whether in a bill of this sort it is sufficient to aver in general terms that the plaintiff is entitled under the statute to certain property, describing it as 'common property.'

"It is said in Mann v. Morewood, 5 Sand. 557, that the facts which the code requires to be stated as constituting a cause of action 'can only mean real traversable facts, as distinguished from propositions or conclusions of law, since it is the former, and not the latter, that can alone, with any propriety, be said to constitute a cause of action.' So in Adams v. Holley, 12 How. Pr. 330, it was held that a count was

fatally defective which averred the plaintiff to be the owner of certain effects, the court saying: 'The defendant has the right to be informed how and when the plaintiff became the owner of the rights and interests of the respective properties. The plaintiff only alleges that he is the owner, etc., which is only a legal conclusion. He should state some issuable fact by which it would appear that he was the owner.' In Thomas v. Desmond, 12 How. Pr. 321, the same question arose on the same words, and the court said: 'The allegation (of ownership) is only a conclusion of law. The defendant has a right to be informed by the complaint how the plaintiff became the owner of the demand, whether by purchase, assignment, operation of law, or how otherwise. Some fact or facts should be stated by which it would appear how he became such owner': See, also, Russell v. Clapp, 7 Barb. 482, etc. The averment that particular property is common property amounts, in the connection in which it is used, to the same general claim of ownership. It could only, under the statute or the civil law, be such by virtue of particular facts or relations; and it is necessary for these to appear to enable the court to pronounce whether it be such. According to the argument, it would do for the late wife, in a proceeding of the sort, to omit every averment except the fact of marriage and dissolution, and the averment that there was 'common property' now held by the husband. We think this cannot be maintained.''

The same doctrine was held by the supreme court of this state in the case of People v. Jackson, 24 Cal. 630, where it was held that in pleading title to land under any act of the legislature which prescribes conditions upon the performance of which the title may be secured, it is necessary to aver a performance of all the acts required by the statute; that while in cases of contract a general averment of the performance of conditions precedent would be sufficient, yet, in all other cases, the facts showing a performance must be specially pleaded.

The same doctrine was reaffirmed in the case of Rhoda v. Alameda County, 52 Cal. 350. In this case the plaintiff sued the county for an injury to real property and obtained judgment by default, from which the county appealed. The court

in its opinion said: ''The Political Code, section 4072, prohibits the board of supervisors from considering a claim against a county 'unless an account, properly made out, giving all items of the claim duly verified as to its correctness, and that the amount claimed is justly due, is presented to the board within a year after the last item of the account occurred.' No action can be prosecuted against the county on such demand until it has been first presented to the board of supervisors for allowance in the manner required by the statute, and has been rejected: Alden v. County of Alameda, 43 Cal. 272.

''The averment on this point in the complaint is that the plaintiffs 'have duly presented their claim for the value of said vault to the board of supervisors of said county of Alameda for allowance, and that said board have rejected said claim and the whole thereof.'

''This averment is insufficient. It is the averment in general terms of the performance of a condition precedent prescribed by the statute. 'In actions upon contracts a general allegation of performance of conditions precedent is declared sufficient by our statute. But a general allegation of the performance of conditions prescribed by a statute has not been so declared and is not therefore sufficient': Himmelman v. Danos, 35 Cal. 441. 'When a pleader wishes to avail himself of a statutory privilege or right given by particular facts, he must show the facts': Dye v. Dye, 11 Cal. 167.''

In the case of Aurrecoechea v. Sinclair, 60 Cal. 540, in passing on an allegation in a pleading by the plaintiffs ''that they were bona fide purchasers of land under the laws of the state, and that a certificate of purchase was issued to them,'' which was coupled with a statement of facts showing that plaintiffs had complied with the laws of the state, so as to constitute them bona fide purchasers from the state, the supreme court held the pleading insufficient, because it alleged a conclusion of law, instead of a statement of facts. The court in that case said: ''Averments of legal conclusions in a pleading do not obviate the necessity for a statement of the facts which are essential to constitute a right claimed under a statute.''

In the case of Judah v. Fredericks, 57 Cal. 389, the supreme court of this state held that an allegation in the complaint that the plaintiff "is the duly appointed, qualified and acting executrix of the last will and testament of John Ferguson, deceased," was not a sufficient averment of the official character of the plaintiff, and accordingly on this ground the complaint was held to be bad on general demurrer. After citing several cases to which reference has hereinbefore been made, our supreme court speaks with approbation of the decision of the New York court of appeals, in several similar cases, as follows:

"The case of White v. Joy, 13 N. Y. 86, was the case of a receiver claiming title to property, and the court there says: 'The answer is apparently founded upon the principle that where a receiver would make title in pleading to a chose in action or other property, which had belonged to a corporation which he represents, he must set out the facts showing his appointment. In such a case it will not answer merely to describe himself as receiver, or even under the former system to aver that he was duly appointed. He must set out the proceedings so that the court may see that the appointment was legal. In such a case the appointment of the receiver is a part of the plaintiff's title. It is like the granting of administration or of letters testamentary in a suit by executors or administrators; unless the fact is stated, the plaintiff does not show any right to sue.'

"The case of Beach v. King, 17 Wend. 197, is directly in point, and Mr. Justice Bronson, speaking for the court, there says: 'The defendant cannot be administrator unless letters of administration of goods and chattels and credits of the intestate have been granted to him by one of the surrogates of this state. The proper mode of pleading the fact is by a direct allegation that such letters were granted. The defendant has not pursued that course, but pleads that he was duly appointed administrator. This allegation consists partly of matter of fact and partly of matter of law, and is not capable of trial. That the defendant was appointed administrator by somebody or in some form is a question of fact, but whether he was duly appointed or not is a question of law. The defendant should have stated how he was appointed, and

then the court could determine its sufficiency on demurrer, or, if an issue to the contrary were joined upon the fact of having obtained letters, the question could be tried by a jury': See, also, Gillet v. Fairchild, 4 Denio, 83; Forrest v. Mayor etc., 13 Abb. Pr. 350.'' See, also, Barfield v. Price, 40 Cal. 535.

It seems to be shown by an unbroken current of decisions of the supreme court of this state that a pleader, under our Code of Civil Procedure, wishing to avail himself of a statutory right or privilege, or whose right to appear as a party in court depends upon conditions prescribed by statute, must allege the particular facts showing a compliance with the statutes under which he claims the right to appear as a party to an action or special proceeding under our code.

It is also shown by the same weight of authority that in all states having the common law for their basis of jurisprudence, the status of adoption and the method by which this relation is created must of necessity be a statutory product, and that in this state particularly it must rest upon the judgment and determination of a judicial officer, and that, therefore, the naked allegation that the contestants are the adopted and only children and heirs at law is nothing but a conclusion of law, tendering no issue of fact, and that this court and this petitioner have a right to be informed by the written grounds of opposition to the probate of this will upon what particular facts rests this claim of adoption, so that this court may determine whether, under the laws of this state, or under the laws of any state, the precedent conditions exist which constitute a valid adoption, and invest these contestants with the right of inheritance as the heirs at law of William Renton, deceased.

Demurrer sustained; ten days to plead anew.

---

### RIGHT OF ADOPTED CHILDREN TO INHERIT.

Status of Adopted Children as Heirs.—Adoption was recognized by the law of Rome and of other ancient nations: Hockaday v. Lynn, 200 Mo. 456, 118 Am. St. Rep. 672, 98 S. W. 585. It was known even to the American Indians: Non-she-po v. Wa-win-ta, 37 Or. 213, 82 Am. St. Rep. 749, 62 Pac. 15. At the common law of England, however, adoption and heirship by adoption were unknown. They are therefore dependent, in the several states of the Union, upon statutory en-

actments. It would seem that statutes providing for so humane and beneficent an institution as adoption would be welcomed by the courts and given full force and effect. But as a rule the courts have been inclined to maintain the same frigid attitude toward such statutes as they maintain against all legislative changes in the law. Some, though by no means all, of the courts have exacted a strict compliance with the statutes in order to effect a legal adoption at all, while the great majority of the courts have been disposed to minimize the rights of adopted children to take property by inheritance: See the note to Van Derlyn v. Mack, 109 Am. St. Rep. 674; Albring v. Ward, 137 Mich. 352, 100 N. W. 609; Bowins v. English, 138 Mich. 178, 101 N. W. 204; Beaver v. Crump, 76 Miss. 34, 23 South. 432; Estate of Carroll, 219 Pa. 440, 123 Am. St. Rep. 673, 68 Atl. 1038.

It has been decided that an adopted child is not within a conveyance to "bodily heirs": Balch v. Johnson, 106 Tenn. 249, 61 S. W. 289; and that where a testator bequeaths his property to his "lawful heirs," he does not intend to include an adopted child: Morrison v. Estate of Sessions, 70 Mich. 297, 14 Am. St. Rep. 500, 38 N. W. 249. But a deed conveying a remainder in fee to the "heirs generally" of the life tenant, if she should die leaving no child, gives such remainder to an adopted child: Butterfield v. Sawyer, 187 Ill. 598, 79 Am. St. Rep. 246, 58 N. E. 602, 52 L. R. A. 75, 79; and under a conveyance transferring real property to a trustee to be held for the use of a designated beneficiary during her natural life, and at her decease to her heirs at law, a child subsequently adopted by the beneficiary is, upon her death, entitled to take under such conveyance as heirs at law of the original beneficiary: Gilliam v. Guaranty Trust Co., 186 N. Y. 127, 116 Am. St. Rep. 536, 78 N. E. 697; and an adopted child is "issue" under a statute providing that when a husband dies intestate and "leaves no issue living," his widow shall receive a certain portion of his real estate: Buckley v. Frazier, 153 Mass. 525, 27 N. E. 768.

Adopted children take under a life insurance policy as "children" of the assured, who is their adoptive parent: Virgin v. Marwick, 97 Me. 578, 55 Atl. 520; Von Beck v. Thomsen, 60 N. Y. Supp. 1094, 44 App. Div. 373, affirmed in 167 N. H. 601, 60 N. E. 1121. An adopted child who is not mentioned in the will of his adoptive parent takes his share of the estate by descent as a pretermitted child: Flannigan v. Howard, 200 Ill. 396, 93 Am. St. Rep. 201, 65 N. E. 782, 59 L. R. A. 664; Van Brocklin v. Wood, 38 Wash. 384, 80 Pac. 530; In re Sandon's Will, 123 Wis. 603, 101 N. W. 1089; and the adoption of a child works a revocation of a prior will executed by the adoptive parent, the same as would the birth to him of a child: See the note to Van Derlyn v. Mack, 109 Am. St. Rep. 678.

**Extraterritorial Force of Adoption.**—The general rule is that the adoption of a child authorized by the laws of the state gives it the status of a child of the adoptive parent, and this status, with the consequent capacity to inherit from such parent, will be recognized

and upheld in every other state, so far as they are not inconsistent with its own laws and policy. Hence, a child adopted in one state has capacity to inherit land situated in another state whose law and policy are not essentially different from those of the first state: In re Williams, 102 Cal. 70, 41 Am. St. Rep. 163, 36 Pac. 407; Van Matre v. Sankey, 148 Ill. 536, 39 Am. St. Rep. 196, 36 N. E. 628, 23 L. R. A. 665; Gray v. Holmes, 57 Kan. 217, 45 Pac. 596, 33 L. R. A. 207; Succession of Caldwell, 114 La. 195, 108 Am. St. Rep. 341, 38 South. 140; Ross v. Ross, 129 Mass. 243, 37 Am. Rep. 321. The extra-territorial effect of adoption proceedings is further discussed in the note to Van Matre v. Sankey, 39 Am. St. Rep. 229.

**Retrospective Operation of Statutes.**—Heirs at law do not, prior to the death of the ancestor or other person from whom they claim, have any vested right in the continuance of their heirship, but the legislature has power to provide for a different line of inheritance. Hence it is that, though at the date of its adoption, a child may not be entitled to take as heir at law of the adopting parent, a subsequent enactment giving adopted the same right of inheritance as other children of the adopting parent operates for the benefit of a previously adopted child, although thereby persons who would be heirs at law but for such enactment are deprived of the inheritance: Dodin v. Dodin, 16 App. Div. 42, 44 N. Y. Supp. 800; Theobald v. Smith, 103 App. Div. 200, 92 N. Y. Supp. 1019; Gilliam v. Guaranty Trust Co., 186 N. Y. 127, 116 Am. St. Rep. 536, 78 N. E. 697.

A deed conveying land in fee to the "heirs generally" of the life tenant, if she should die leaving no child, gives such remainder to an adopted child, under a statute which provides that such child shall be deemed, for the purposes of inheritance, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, even though such statute was enacted after the deed was executed: Butterfield v. Sawyer, 187 Ill. 589, 79 Am. St. Rep. 246, 58 N. E. 602, 52 L. R. A. 73, 79. But adoption proceedings under a statute cannot devest an estate already vested in heirs, although the statute is intended to act retrospectively: Ballard v. Ward, 89 Pa. 358. A holding somewhat analogous to this will be found in Blodgett v. Stowell, 189 Mass. 142, 75 N. E. 138.

**Inheritance by Child from Adopting Parent.**—The authorities are generally agreed that for purposes of inheritance from the adoptive parents an adopted child is the lawful child of such parents, the same as though he were born of them in lawful wedlock, save as otherwise provided by the statute: Matter of Newman, 75 Cal. 213, 7 Am. St. Rep. 146, 76 Pac. 887; Matter of Evans, 106 Cal. 562, 39 Pac. 860; Flannigan v. Howard, 200 Ill. 396, 93 Am. St. Rep. 201, 65 N. E. 782, 59 L. R. A. 664; Markover v. Krauss, 132 Ind. 294, 31 N. E. 1047, 17 L. R. A. 806; Patterson v. Browning, 146 Ind. 160, 44 N. E. 993; Wagner v. Varner, 50 Iowa, 532; Hilpire v. Claude, 109 Iowa, 159, 80 N. W. 332; Vidal v. Commagere, 13 La. Ann. 516; Cunningham v. Lawson, 111 La. 1024, 36 South. 107; Fiske v. Pratt, 157 Mass. 83, 31 N. E.

715; Fosburgh v. Rogers, 114 Mo. 122, 21 S. W. 82, 19 L. R. A. 201; Moran v. Stewart, 122 Mo. 295, 26 S. W. 962, 132 Mo. 73, 33 S. W. 443; Moran v. Moran, 151 Mo. 558, 52 S. W. 378; Martin v. Long, 53 Neb. 694, 74 N. W. 43; Simmonds v. Burrell, 8 Misc. Rep. 388, 28 N. Y. Supp. 625; Rowan's Estate, 132 Pa. 299, 19 Atl. 82; Peterson's Estate, 212 Pa. 453, 61 Atl. 1005; Eckford v. Knox, 67 Tex. 200, 2 S. W. 372. A contrary rule appears to prevail in the District of Columbia: Moore v. Hoffman, 2 Hayw. & H. 173, Fed. Cas. No. 9764a.

The status of an adopted child in this respect is well expressed in Power v. Hafley, 85 Ky. 671, 4 S. W. 683. "It is the event of the adoption," said the court in that case, "that fixes, under the law authorizing the adoption, the legal status of the adopted child; and the child, by the event of adoption, becomes the legal child of the adopting parents, and stands, as to the property of the adopting parent, in the same light as a child born in lawful wedlock, save in so far as the exceptions of the statute authorizing adoption declare otherwise. And when the statute authorizes a full and complete adoption, the child adopted thereunder acquires all of the legal rights and capacities, including that of inheritance, of a natural child, and is under the same duties"; approved in Virgin v. Marwick, 97 Me. 578, 55 Atl. 520; Ferguson v. Herr, 64 Neb. 649, 90 N. W. 625, 94 N. W. 542.

In case one spouse alone adopts a child, or in case the statute gives an adopted child the right to inherit from one parent only, it would seem that the child is not entitled to inherit from the other spouse: Webb v. Jackson, 6 Colo. App. 211, 40 Pac. 467; Sharkey v. McDermott, 16 Mo. App. 80; note to Van Derlyn v. Mack, 109 Am. St. Rep. 676, where the property rights of the surviving spouse, as against those of adopted children, are discussed.

Inheritance from Natural Parents.—The adoption of a child does not deprive him of his right to inherit from his relatives by blood, unless the statute provides otherwise. Hence, a child may inherit both from his adoptive and from his natural parents: Humphries v. Davis, 100 Ind. 274, 50 Am. Rep. 788; Clarkson v. Hatton, 143 Mo. 47, 65 Am. St. Rep. 635, 44 S. W. 761, 39 L. R. A. 748.

Inheritance from First and Second Adopting Parents.—If, then, a child may inherit from its natural and also from its adoptive parents, there is no reason why an adopted child cannot inherit from both its first and its second adoptive parents. In other words, the relation of heirship created by the adoption of a child is not destroyed by a second adoption after the death of the first adopting parent: Patterson v. Browning, 146 Ind. 160, 44 N. E. 993.

Inheritance in Twofold Capacity of Children and Grandchildren.— Where a person adopts his grandchildren, and the natural parent of the children dies before the grandparent who has adopted them, it has been decided in Iowa that they would inherit from him in the double capacity of children and grandchildren: Wagner v. Varner,

50 Iowa, '532. But in Massachusetts and Pennsylvania it has been affirmed that they inherit from him in the capacity of children only: Delano v. Bruerton, 148 Mass. 619, 20 N. E. 308, 2 L. R. A. 698; Morgan v. Reel, 213 Pa. 81, 62 Atl. 253.

Inheritance from Kindred of Adopting Parent.—While an adopted child is entitled to inherit directly from his adopting parents, he is not, as the statutes have usually been construed, entitled to inherit through them from their ancestors: In re Sunderland, 60 Iowa, 732, 13 N. W. 655; Meader v. Archer, 65 N. H. 214, 23 Atl. 521; Quigley v. Mitchell, 41 Ohio St. 375; Phillips v. McConica, 59 Ohio St. 1, 69 Am. St. Rep. 753, 51 N. L. 445. Neither is he entitled to inherit from the collateral kindred of his adoptive parents: See Hockaday v. Lynn, 200 Mo. 456, 118 Am. St. Rep. 672, 98 S. W. 585; Van Derlyn v. Mack, 137 Mich. 146, 109 Am St. Rep. 669, 100 N. W. 278; Estate of Moore, 35 Vt. 98. "He can inherit directly from his parent, but he cannot inherit in lieu of his parent, by right of representation, from any of his parent's kindred": Wygeth v. Stone, 144 Mass. 441, 11 N. E. 729. In some of the states, moreover, an adopted child cannot inherit from the natural children of his adoptive parent: Keegan v. Geraghty, 101 Ill. 26; Helms v. Elliott, 89 Tenn. 446, 14 S. W. 930, 10 L. R. A. 535; note to Van Matre v. Sankey, 39 Am. St. Rep. 226. But in other states the law is otherwise: Stearns v. Allen, 183 Mass. 404, 97 Am. St. Rep. 441, 67 N. E. 349.

Inheritance from Adopted Child.—There are a number of adjudications to the effect that on the death of an adopted child his estate goes to his relatives by blood, and not to his adopting parents or relatives by adoption: See the note to Van Derlyn v. Mack, 109 Am. St. Rep. 676; White v. Dotter, 73 Ark. 130, 83 S. W. 1052. But under a statute which provides that the adoptive parents shall inherit from their adopted child such property, with its profits and accumulations, as the child may have taken through them, the right of inheritance is not restricted to the particular property received by the child, but includes the proceeds thereof: Swick v. Coleman, 218 Ill. 33, 75 N. E. 807.

Inheritance Through Adopted Child.—The heirs of an adopted child may be entitled to inherit through her a share of the estate of the deceased adopting parent, just as though she were a daughter by blood: See the note to Van Derlyn v. Mack, 109 Am. St. Rep. 676. Where an adopted child dies before the death of his adopting parent, leaving children, they inherit from the estate of the adopter of their deceased parent as if they were his grandchildren: Power v. Hafley, 85 Ky. 671, 4 S. W. 683. And an adopted child takes a legacy given to one of its adopted parents, who dies before the testator, where the statute authorizing the adoption declares that the child becomes, to all intents and purposes, the child of its adopters, the same as if born to them in lawful wedlock: Warren v. Prescott, 84 Me. 483, 30 Am. St. Rep. 370, 24 Atl. 948, 17 L. R. A. 435.